### RECONSTRUCTION FINANCE CORPORATION v. MUNICIPAL BUILDING CORPORATION OF ELLSWORTH, ME., et al.

#### Civil Action No. 156.

District Court, D. Maine.

Dec. 14, 1945.

Eaton & Peabody, of Bangor, Me., and Frank Lee, of Washington, D. C., for plaintiff.

Clarke & Silsby, of Ellsworth, Me., Edgar M. Simpson, of Bangor, Me., and Philip R. Lovell, of Ellsworth, Me., for defendant City of Ellsworth.

Harvard W. Blaisdell, of Ellsworth, Me., for defendant Municipal Building Corporation.

SWEENEY, District Judge.

This is a motion for summary judgment filed by the plaintiff under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723c. Plaintiff has also filed a motion for judgment on the pleadings.

Plaintiff, Reconstruction Finance Corporation, is a Federal corporation created by and organized under the Reconstruction Finance Corporation Act, 47 Stat. 5, 15 U. S.C.A. § 601 et seq., as amended and supplemented. The defendant, the Municipal Building Corporation of Ellsworth, is a non-profit Maine corporation with its principal place of business in Ellsworth. The defendant, City of Ellsworth, is a municipal corporation, created, organized, and existing under the Constitution and Statutes of the State of Maine.

In May, 1933, a disastrous fire destroyed the Municipal Building of the City of Ellsworth in which was contained the offices of the City Government and Auditorium and Police Headquarters. The Fire Station of the City was also destroyed.

Immediately following the fire, plans were made for rebuilding the Municipal Building as a structure which would be a combination City Hall and Fire Station. A site was selected for the new building, and on August 17, 1933, an application by the City of Ellsworth, duly authorized, was made to the Ellsworth Rehabilitation Corporation, an agency of the Reconstruction Finance Corporation, for a loan in the sum of $130,000 under the provisions of Section 201(a) (6) of the Reconstruction Finance Corporation Act as amended, 15 U.S.C.A.

§ 605b(a) (6).[1]  However, when an examination of the financial condition of the City of Ellsworth indicated that the City's legal borrowing capacity was insufficient for this purpose, and that the proposed loan would be in violation of the provisions of the Maine Constitution in limitation of municipal indebtedness, the City of Ellsworth withdrew its loan application.

Thereupon various citizens of the City of Ellsworth sought the medium of a private corporation through which relief could be secured.  They organized, under the General Laws of Maine, a separate and independent nonprofit corporation, with capital stock, which corporation is the defendant, Municipal Building Corporation of Ellsworth.  A contract was entered into between the Building Corporation and the City whereby the City would convey to it the land purchased for the new building site for the sum of $15,000 to be paid for by the note of the Building Corporation. The contract further provided that the Building Corporation would apply to the plaintiff through the Ellsworth Rehabilitation Corporation for a construction loan secured by mortgage of the land and building, and that, when the loan was granted and the building constructed, the Building Corporation would reconvey the land and buildings thereon subject to the mortgage. The City agreed to redeliver to the Building Corporation the latter's note for $15,000 when the reconveyance was made.  The terms and conditions of this agreement were known to the plaintiff at the time the application for the loan was made and granted.

A mortgage was given by the Building Corporation to the Rehabilitation Corporation to secure a note for $111,000 with interest, and the land and building were reconveyed to the City by deed subject to the mortgage with an assumption by the City to pay the mortgage note "to the extent permitted by law."  The City thereupon occupied and has continued to occupy the building as a city hall and fire station. The City made interest payments on the mortgage debt for several years, and successfully negotiated with the plaintiff for an extension of the maturity date of the loan to July 11, 1939, and for a revision of the interest rate.  The last interest payment was made on February 9, 1939.  The City of Ellsworth has made no further payments, contending that the note and mortgage are void, both as against itself and the Municipal Building Corporation, because of the debt limit provisions of the Maine Constitution.

The plaintiff has brought this civil action, equitable in nature, to recover the full amount of $111,000 principal and interest thereon, with prayers for alternative relief.

■  A well recognized exception to the doctrine of non-enforceability of municipal obligations which exceed constitutional limitations on indebtedness is found in the special fund cases.  Where a municipality agrees to pay out of a fund to be realized in a certain way there is an implied obligation to set up the mechanism to provide for payment.  Failure to set up the fund to liquidate its obligation imposes a general liability irrespective of constitutional inhibitions.  It is a liability which sounds in tort rather than contract.  City of Mankato v. Barber Asphalt Paving Co., 8 Cir., 142 F. 329; Public Market Co. of Portland v. City of Portland, 171 Or. 522, 130 P.2d 624, 650, 651, 138 P.2d 916; 1 Dillon, Municipal Corporations, 5th Ed. Sec. 201, p. 378.

---

1 Sub-section 605b (a) of Title 15 authorizes the Reconstruction Finance Corporation:

"(6) to make loans to nonprofit corporations, with or without capital stock, organized for the purpose of financing the repair or reconstruction of buildings damaged by earthquake, fire, tornado, or cyclone in the year 1933 and deemed by the Reconstruction Finance Corporation economically useful.  Obligations accepted hereunder shall be collateraled (a) in the case of loans for the repair or reconstruction of private property, by the obligations of the owner of such property secured by a paramount lien except as to taxes and special assessments on the property repaired or reconstructed, or on other property of the borrower, and (b) in the case of municipalities or political subdivisions of States or their public agencies, including public-school boards and public-school districts, by an obligation of such municipality, political subdivision, public agency, public-school board, or public-school district.  The Corporation shall not deny an otherwise acceptable application for loans for repair or construction of the buildings of municipalities, political subdivisions, public agencies, public-school boards, or public-school districts because of constitutional or other legal inhibitions affecting the collateral.  *  *  *"

In authorizing the Reconstruction Finance Corporation to make loans under subsection 605b(a) of Title 15 for self-liquidating projects, Congress defined "self-liquidating" in the following terms:

"For the purposes of this subsection a project shall be deemed to be self-liquidating if such project will be made self-supporting and financially solvent and if the construction cost thereof will be returned within a reasonable period by means of tolls, fees, rents, or other charges, or by such other means (other than by taxation) as may be prescribed by the statutes which provide for the project * * *."

When the contract between the Building Corporation and the Rehabilitation Corporation was entered into, there was no agreement as to the method of self-liquidation to be used. However, the Building Corporation is charged with knowledge of the requirements laid down in the legislation, and was under a duty to provide a means for self-liquidation. When the City of Ellsworth accepted reconveyance of the land and building for nominal consideration it denuded the Building Corporation of its sole assets and deprived it of its ability to make the project self-liquidating. The City, with full knowledge of the circumstances, stands in the place of the Municipal Building Corporation, and an implied burden rests upon the City to restore it to the status quo or to render the equivalent of the outstanding obligation.

In addition, when the City agreed to accept reconveyance subject to the mortgage, it also agreed to assume the mortgage debt "to the extent permitted by law." The plaintiff stands in the position of a third party beneficiary of this promise. Verrill v. Weinstein, 135 Me. 126, 190 A. 634; Flint v. Land Co., 89 Me. 420, 36 A. 634. The creation of a special fund was a method "permitted by law" to provide for payment of the indebtedness. The City was equally charged with knowledge of the requirements for self-liquidation laid down in the statute. Having failed to attempt to provide for self-liquidation, the City has violated its implied obligation and may be held generally liable on the special fund analogy.

It may be admitted that the special fund cases, particularly those dealing with special assessments, involve express promises to set up particular means for self-liquidation which were available under existing charters, and violations of those promises. I believe, however, that the general doctrine of special funds can be applied in the instant case. There was an implied obligation on the part of the City to provide for self-liquidation of this loan "by means of tolls, fees, rents, or other charges * * *". Within its existing powers was that of renting part or all of the building to private persons. The City might have sought enabling legislation under which revenue bonds could have been issued against the building, or under which an improvement district could be created to take and hold title in such manner as to permit the City of Ellsworth legally to pay rent thereon toward its maintenance and amortization of the debt. The City was obligated to use some method for self-liquidation; it chose to do nothing.

Although the liability of the defendant City of Ellsworth is essentially ex delicto, the plaintiff is not barred by the statute of limitations or the common law doctrine of laches. This action was brought in December, 1943, and the payments of interest ceased in 1939. At this point the City chose to rest on what it called a void obligation and made no other provisions for self-liquidation. The fact of payment of interest and the securing of an extension of maturity of the loan raises an estoppel on the question of laches.

### Conclusions of Law

In the light of the foregoing, I find and rule that the City of Ellsworth is liable for the full amount of the $111,000 principal and all interest shown to be due thereon, said judgment to be paid by the City as any other ex delicto judgment. The motions for judgment are allowed.