## Soupcoff Estate

*Alan Berman*, for estate.

*John P. Vetica*, for claimant.

OPINION BY EUNICE ROSS, J., SEPTEMBER 10, 1981:

At the audit hearings on the account of Norman Soupcoff, surviving spouse and executor of the will of Catherine Soupcoff, Harriet Joan Borger (decedent's sister) and Minnie B. Hartman (decedent's mother) asserted a claim to certain items of personalty of which Catherine Soupcoff died the owner. The claims are based on alleged inter vivos gifts made by Norman Soupcoff, a legatee of these items in his wife's will, after decedent's death.

Mrs. Borger claims a diamond ring which at the hearing held August 12, 1981, Norman Soupcoff admitted giving to her with intent to make a gift along with some clothing items not in dispute. Thus, the claim of Harriet Joan Borger for the diamond ring will be allowed, but a remaining matter for adjudication is Mrs. Hartman's claim for a jewelry box and its contents as a gift from Mr. Soupcoff after the death on February 14, 1980, of his wife, a resident of Pittsburgh, Allegheny County, Pennsylvania. Decedent's will dated December 17, 1976, in paragraph third gave to her husband all her "tangible personal property including . . . household goods, furniture, furnishings, books, pictures, silver, chinaware, jewelry, automobiles and personal effects and any insurance thereon. . . ." Mrs. Borger and Mr. Soupcoff shared decedent's

residuary estate 20% and 80% respectively after a bequest of $500 to Mrs. Hartman. Other alternative gifts were not effective.

After petition filed August 2, 1980, by Norman Soupcoff for the return of the jewel box and its contents and the ring, they were returned to counsel for claimants and for the estate in accordance with the court order dated October 22, 1980. The estate inventory filed thereafter December 5, 1980, includes the ring valued at $1150, a cultured pearl necklace with diamond clasp valued at $325, a gold chain with medallion at $195 and costume jewelry worth $100.

The facts found after the hearing as to the alleged gift of the jewelry box and its contents follow.

Mrs. Borger learned of her sister's death Thursday, February 14, 1980, and drove with her husband, Leonard, and mother immediately from their home in Kunkletown, Pennsylvania, to Pittsburgh arriving at 7:00 o'clock p.m. Mrs. Borger stayed with Mr. Soupcoff until Tuesday morning, February 19, 1980. The Borger children arrived February 16 with another sister. Soupcoff's children by a prior marriage also came but unlike the dead wife's relatives slept elsewhere.

After the services held February 16 Mrs. Borger asked the widower whether because of decedent's will there was anything for her to do about her sister "things" before her return home. A day later Mr. Borger repeated the request. His wife was shown the will.

Mrs. Hartman returned February 17, 1980, to Kunkeltown where she lives above the garage on the Borger property.

Mrs. Borger and Norma Smith (Soupcoff's daughter) on the morning of February 18 were in the Soupcoff bedroom sorting decedent's clothes for division between them. Mrs. Borger's share included a small mink stole. Mr. Soupcoff and Mr. Borger were in the next room, a living room. Mrs. Smith called Mr. Soupcoff into the bedroom and she and Mrs. Borger suggested that the decedent's jewelry box and nursing cap and pin be given to Mrs. Hartman. Soupcoff responded it was all right because he could not wear the items and left the room. The next morning Soupcoff asked Mrs. Borger to return a gold charm bracelet from the box of jewelry which was packed

with her share of decedent's clothing in her car. She gave the bracelet back asking if he wanted anything else from the clothing and jewelry in the automobile. Soupcoff responded in the negative.

Mrs. Borger returned to Kunkletown with her husband February 19, 1980, but her mother "was very upset" so Mrs. Borger has retained possession of the jewelry box in her safe because Mrs. Hartman "just couldn't accept it." Mrs. Borger has used nothing from the box other than the diamond ring admittedly given her. Thereafter Mrs. Borger talked several times by telephone with Mr. Soupcoff and no mention was made of the box or its contents until March 26, 1980, and April 1, 1980, when Mr. Soupcoff or his attorney demanded the return of three items, a gold chain with gilded silver dollar pendants and two cultured pearl necklaces.

Mr. Soupcoff argues that by reason of his wife's sudden and unexpected death in his presence he was distraught, that he agreed to Mrs. Borger's seeing the will and taking his wife's clothing although he believed she should have waited a while. He claims he had no intent to give the jewel box and its contents to Mrs. Hartman. He asserts he did not know that the jewel box was in the Borger automobile but admits asking for the charm bracelet before Mrs. Borger left. He also admits giving Mrs. Borger the diamond ring and clothing and giving his daughter some personal effects (a diamond watch, a fur coat) and one-half the clothing. He later gave his son an automobile. He claims he never realized the jewel box was gone for a long time although it measured 6" x 12" and sat on the dresser in his bedroom.

The court finds Mrs. Borger and her husband to be credible witnesses and Mr. Soupcoff not to be credible when he asserts that he did not transfer possession of the jewel box and its contents to Mrs. Borger to give to her mother Mrs. Hartman.

The orphans' court division here has jurisdiction over the adjudication of title to the disputed personal property because it was in the possession of the personal representative after death and was in decedent's possession at the time of her death: Probate, Estates and Fiduciaries Code of June 30, 1972, P.L. 508, §2, 20 Pa. C.S.A. 711(17).

Since admittedly the box and contents belonged to decedent, the burden of persuasion that Mr. Soupcoff, decedent's legatee, made a gift of the jewel box and its contents after decedent's death is initially on Mrs. Hartman (who appeared at the hearing to assert her claim although it was stated at the initial audit hearing by counsel unattended by claimants that Mrs. Borger claimed the box and contents): *Henes v. McGovern,* 317 Pa. 302, 306-311; *Ryan v. MacDonald,* 151 Pa. Super. 607, 609. The evidence even if the donor is alive should .be clear and convincing: *Brightbill v. Boeshore,* 385 Pa. 69, 74-75; *Crawford v. Brandl,* 121 Pitts. 199, 205 (donor's evidence contra gift); *Zavada v. Anderson,* 15 Mercer 6 (donor's evidence contra gift).

What then must Mrs. Hartman prove? (The Dead Man's Act, Judicial Code of July 9, 1976, P.L. 586, §5930, 42 Pa. C.S.A. 5930, is not relevant in this proceeding between living donor and donees). She must prove by clear and convincing evidence that Mr. Soupcoff intended to make a gift to her by words *in praesenti* and that there was a delivery of the box and its contents in such a way as to divest Soupcoff of and to invest Mrs. Hartman with all dominion thereof: *Wagner v. Wagner,* 466 Pa. 532, 537, 539; *Kerwin Est.,* 371 Pa. 147, 159-160; *Fross's Ap.,* 105 Pa. 258, 267. Gifts may be effectuated even though delivery is made to a third party, here Mrs. Borger, so long as Soupcoff parted with control and gave instructions to Mrs. Borger to deliver the box to Mrs. Hartman: *Chambly v. Rumbaugh,* 333 Pa. 319, 322, 323. Such were the facts found by the court.

Mr. Soupcoff incredibly raises the issue of his incapacity to make a gift of the box by reason of his distress at his wife's death. Capacity relates to his soundness of mind. The issue is whether his mind had full and intelligent knowledge of the act engaged in, had an intelligent perception and understanding of the dispositions made of the property and the person whom he wished to be the recipient of his bounty: *Null's Est.,* 302 Pa. 64, 66, 67. The burden lies with Mr. Soupcoff to prove his incapacity and since he admits capacity as to other gifts of clothing and jewelry made at the same time the box was given, the court finds he had donative capacity as to the gift to Mrs.

Hartman: *Laskey v. Paprocki*, 363 Pa. 50, 52; *Null's Est., supra*, 66.

A donee's acceptance of a gift is implied if it is for her benefit: *Rynier Est.*, 347 Pa. 471, 474, 475; *Reap v. Wyoming Valley Trust Company*, 300 Pa. 156, 158. It is true Mrs. Hartman has never put the jewel box and its contents into her home but Mr. Soupcoff parted with his dominion and by asserting her claim against him and as superior to that of Mrs. Borger on whose property she lives, Mrs. Hartman ratifies the gift: *Rynier Est., supra*, 475. Mrs. Borger has never acted adversely to the claim of her mother and holds the box and its contents as custodian. Mr. Soupcoff cannot revoke this executed gift: *Brightbill v. Boeshore, supra*, 78-79.

Because of the clear and convincing proof of present donative intent and sufficient delivery, the court finds a gift.

The box and its contents including the two pearl necklaces and the gold chain with gilded silver dollar pendants will be awarded Mrs. Hartman and the diamond ring will be decreed to Mrs. Borger.